# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### Boston, Massachusetts

# 03    12616 EFH

JAMES C. DRAGON,
     **Petitioner/Plaintiff,**

vs.

**MASSACHUSETTS BOARD OF BAR OVERSEERS**
    **Respondent/Defendant.**

)
)
) **Docket No.**
)
)

MAGISTRATE JUDGE Collings

# PETITION FOR
## WRIT OF MANDAMUS
## AND REVIEW OF FEDERAL QUESTIONS
## PRESENTED BY A DECISION OF THE
## MASSACHUSETTS BOARD OF BAR OVERSEERS
## AND AFFIRMED BY
## THE MASSACHUSETTS SUPREME JUDICIAL COURT


Now comes the Petitioner/Plaintiff James C. Dragon and hereby respectfully petitions this Honorable Court for a Writ of Mandamus and for additional relief, as this Court may deem appropriate. In support of this Petition, the Petitioner states as follows:


**I.**                  **JURISDICTION:**

AMOUNT $ 150  52.043
SUMMONS ISSUED Yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. T.O.M
12/30/03

This action arises under **the U.S. Constitution**, and the **Administrative Procedure Act ("APA"), 5 U.S.C., Section 701** *et seq,* <u>INS v. St. Cyr</u>, **533 U.S. 289; 121 S.Ct. 2271; 150 L.Ed. 2d 347; 2001 U.S. LEXIS 4670,** In <u>Lindh v. Murphy, Warden</u>, **117 S.Ct. 2059, 138 L.Ed.2d 481 (1997,** <u>Landgraf v. USI Film Products, et al.</u>, **511 U.S. 244 (1994),** <u>U.S. v. Brown</u>, **381 U.S. 437; 85 S.Ct. 1701; 14 L.Ed. 2d 484; 1965 U.S. LEXIS 2206. This** Court has Habeas Corpus jurisdiction pursuant to **28 U.S.C., Sections 1331** *et seq.*; **Art. I, Section 9, Cl. 2 of the U.S. Constitution** ("Suspension Clause"), **Title V. Extraordinary Writs, Rule 21 Of The Federal Rules Of Appellate Procedure**, and the **Common Law**. There is no other avenue for the Petitioner to challenge, in an independent Court of Law, the findings of the Massachusetts Board of Bar Overseers and Decision to disbar Petitioner for eight years that was affirmed by the Massachusetts Supreme Judicial Court on November 19, 2003.

This Honorable Court may also exercise jurisdiction pursuant to **28 U.S.C., Section 1361 (***mandamus* **jurisdiction) and 28 U.S.C. Section 1331**, and may grant relief pursuant to **Declaratory Judgment Act, 28 U.S.C. Sections 2201** *et seq.* **and the All Writ Act, 28 U.S.C. Section 1651.**

**III.**                                **<u>VENUE:</u>**

Venue lies in the United States District Court District of Massachusetts, the judicial district where the order of disbarment against the Petitioner was entered by the Massachusetts Board of Bar Overseers, and the location of the Massachusetts Supreme Judicial Court, which affirmed the final order of disbarment. **28 U.S.C. Section 2241 *et seq.* and Section 1391.**

**III.**                              **PARTIES:**

The Petitioner is a citizen of Commonwealth Of Massachusetts who was admitted to the Massachusetts Bar in 1988.

The Respondent, Massachusetts Board Of Bar Overseers (BBO), is being sued in its official capacity as the body charged with the responsibility of regulating the conduct of attorneys in Massachusetts.

In 1692, the Supreme Judicial Court was created to control the witchcraft hysteria. Since that time, the SJC has been the highest court in this Commonwealth, and after state-hood, also has been active in regulating the conduct of attorneys. The <u>Supreme Judicial Court Rules</u> have existed in one form or another since at least the turn of the century. Currently, <u>Chapter 3 and Chapter 4 of the SJC Rules</u> govern the <u>Practice of Law and Bar Discipline</u>. The (BBO), mandated by <u>Chapter 4 of The Supreme Judicial Court Rules</u>, was founded in 1974 to hear matters involving attorney discipline. The present rules of the BBO were enacted in 1985.

IV.    **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

1.    Petitioner/Plaintiff (Petitioner) is age 50. He was married in 1986 and resides in Tewksbury, Massachusetts with his wife and their two children, ages 15 and 13.

2.    He graduated from law school in 1984 and was admitted to the practice of law in Massachusetts in June of 1988. He began practicing law in late 1990 in Lowell, Massachusetts and moved his practice to Tewksbury, Massachusetts in December of 2001.

3.    Petitioner was also admitted to practice law in the United States District Court for the First Circuit as well as the First Circuit Court Of Appeals.

4.    From 1990 through 1996, Petitioner conducted a general law practice which attracted many personal injury law clients.

5.    From late 1996 to the September 22, 2003 (date of disbarment), Petitioner's law practice focused on immigration law with a concentration in immigration law litigation.

6.    In November of 1995, Bar Counsel forwarded to Petitioner a Complaint (Sullivan Complaint) that had been filed with the Board by John Sullivan Jr. in September 1995. Mr. Sullivan and Petitioner had been involved in a real estate venture.

7.    Petitioner timely responded to the Sullivan Complaint as well as all of Bar Counsel's requests for information and documentation concerning Petitioner's business dealings with Mr. Sullivan.

8.    On or about June 6, 1996, Bar Counsel forwarded to Petitioner a Complaint (Trudel Complaint) that had been filed with the Bar Counsel by Joan Trudel in April of 1996. The Trudel Complaint gave rise to an investigation into Petitioner's IOLTA Account. The inquiry focused on activity in Petitioner's IOLTA Account from October 31, 1994 through October 20, 1997. . During this period Petitioner had deposited funds into his IOLTA Account for approximately (126) clients. He also had approximately (450) immigration clients during this same period.

9.    Petitioner timely responded to the Trudel Complaint as well as all of Bar Counsel's requests for information and documentation.

10.    Bar Counsel conducted three Personal Interview Sessions with Petitioner; February 23, 1998, March 20, 1998 and May 19, 1998.

11.    During Bar Counsel's investigation, Petitioner responded to each of approximately (47) requests for documents or information from Bar Counsel. In addition Respondent voluntarily supplied many personal affidavits concerning relevant issues.

12.    On March 3, 1999, after Bar Counsel had completed its investigation, Bar Counsel initiated a Petition For Discipline against

Petitioner alleging misconduct concerning (14) separate matters which involved (13) clients, the majority of which involved personal injury cases, and the Sullivan Complaint which was a non-client matter. There were no allegations that money was owed to any client

13.    Petitioner timely answered the four Count Petition For Discipline and then stipulated to (97) of Bar Counsel's allegations, including intentional "commingling of funds" but denied that that he had acted with intent to deprive temporarily or permanently and denied any wrong doing in two of the fourteen matters mentioned in the Petition For Discipline. Petitioner accepted responsibility for the offensive conduct concerning "commingling of funds". Additionally, Petitioner offered a plethora of Mitigation Evidence.

14.    In the fall of 1999, Bar Counsel chose to bring the matter for hearing before a Special Hearing Officer (SHO). The SHO announced to Bar Counsel and Respondent that his practice had focused for many years on Estate Administrations and other Probate related matters and not personal injury cases which were the subject of the great majority of Bar Counsel's allegations. The SHO had been a practicing attorney with an office in approximately fifteen miles from that of Petitioner.

15.     Prior to the commencement of the Hearings, the SHO had engaged in an undisclosed *ex parte* communication with an Attorney who was later called by Bar Counsel to testify at the Hearing.

16.     Six days of Hearings were conducted by the SHO beginning on November 17, 1999, and concluding on February 24, 2000.

17.     The Report of the SHO was announced by the Board Of Bar Overseers on February 26, 2001, slightly more than one year after the Hearings had concluded.

18.     Respondent/Appellant timely forwarded his appeal to the Appeal Panel from the Report Of The Special Hearing Master.

19.     On August 30, 2001, Respondent forwarded to Michael Fredrickson, of the Board of Bar Overseers a request that his office investigate a possible ex parte communication by the SHO. Respondent specifically asked that the request and supporting documentation not be given to the Appeal Panel.

20.     On September 10, 2001, Petitioner, and his counsel appeared to present oral arguments oral arguments to the Appeal Panel. Petitioner's August 30th package concerning the ex parte communication had been copied by the Board and delivered to the members of the Appeal Panel.

21.     On March 16, 2002, Respondent received the Report of the Appeal Panel. The Appeal Panel adopted the findings of fact, conclusions of law and recommendation of the SHO.

22.     On March 22, 2002, Respondent/Appellant timely filed his appeal to the full Board of Bar Overseers from the Report of the Appeal Panel and requested the opportunity to present oral argument.

23.     On April 8, 2002, the full Board Of Bar Overseers adopted the Report Of The Appeal Panel.

24.     On or about May 20, 2002, Bar Counsel filed a statement of information with the Clerk of the Supreme Judicial Court.

25.     On August 23, 2002, the Single Justice of the Supreme Judicial Court deferred to the findings of fact, conclusions and recommendations of the SHO and issued an Order of Disbarment.

26.     On August 30, 2002 the Appellant filed his Notice Of Appeal To The Supreme Judicial Court from the Order and Memorandum of the Single Justice, which was entered on the docket on September 18, 2002.

27.     On November 19, 2003 the Supreme Judicial Court affirmed the Decision of the Single Justice. (See Ex. A attached hereto)

28.     On December 2, 2003, Petitioner filed with the Massachusetts Supreme Judicial Court a Petition For Rehearing which is pending.

**V.**          **STATEMENT OF RELEVANT FACTS**

29.          From 1996 until issuance of the order of disbarment, in September
of 2002, the Appellant changed the focus of his practice to
immigration law, with a concentration in immigration law litigation.
He gained national recognition as a competent immigration lawyer.

30.          After proceedings were instituted against him, on March 30, 1999,
the Appellant filed his Answers, as described in paragraph 2 above.
The Mitigation Statement was referenced at least 23 times in the
Answers; it contained materials documenting the Answers, and it
was an integral part of the Appellant's Answers. Without the
Statement in Mitigation, and the materials contained therein, and
referred to in the other portion, the Answers were not complete, and
could not be fully understood. In addition, the letter filing the
Appellant's Answers with the Court, served on the other parties,
specifically mentioned both portions of said Answers.

31.          In reading the SHO's and the other Reports, the Appellant noticed
omissions and inconsistencies in references to certain Mitigation
factors, particularly those documented in his Mitigation Statement.
When the matter came before the Single Justice, a thorough
verification of the court docket, and ALL documents contained in
the record, at the Court House, executed with the assistance of two

court employees, revealed that the Mitigation Statement had NOT been included in the record.

32.  A review of the record revealed that Bar Counsel (or his agent) neglected to include Appellant's complete Answer to Bar Counsel's Petition For Discipline, deleting Appellant's (134 page) Statement Of Mitigation with Supporting Documents (the "Mitigation Statement"). The Appellant's Answer referred 23 instances, and incorporated by reference, the Appellant's Mitigation Statement.

33.  Petitioner's alleged offensive conduct occurred between 1994 and October 1997 . No alleged conduct occurred after October, and certainly not after December 3, 1997, the date of In Re Schoepfer decision (SJC-07407 (Dec. 3, 1997)) and the conclusion of the investigation on February 19, 1998. During the before-mentioned period, Bar Counsel and the Petitioner were, *inter alia*, preparing for their Personal Interview Sessions, which took place on February 23, 1998; March 20, 1998, and May 19, 1998.

34.  The respondent relied on the unsettled state of law with regard to intentional commingling and deprivation at the Personal Interviews conducted by Bar Counsel, prior to his hearing before the Hearing Officer. **(See Ex. B attached hereto and also at Respondent's Appeal Brief To Single Justice, Aff. No. 7. Affidavit of the Respondent.)** Respondent was offered by Bar Counsel, a

disciplinary sanction less than that recommended by the Special Hearing Officer, but he and his counsel refused that recommendation reasonably believing that **Matter of Schoepfer, SJC-07407 (Dec. 3, 1997) 426 Mass. 183 (1997)** would not be applied retroactively to his case and that, therefore, it was reasonable to expect a trier of fact to recommend a private or public reprimand **(See Ex. C attached hereto and also at Respondent's Appeal Brief To The Single Justice, at App. Aff. No. 8 Affidavit Of Respondent's Counsel, Eugene Patrick McCann).**

35.     After recovering from pneumonia in the summer of 1996, Petitioner put all other matters aside and devoted many hours, weeks and months to reconciling his IOLTA Account that had been neglected and mismanaged. Bar Counsel conceded that all of Respondent's clients mentioned in the Petition For Discipline received the amounts due them.

VI.                              **ARGUMENT**

A.  **THE BOARD OF BAR OVERSEERS VIOLATED RESPONDENTS RIGHT TO DUE PROCESS WHEN IT RETROACTIVELY APPLIED CASE LAW AND STATUTORY LAW TO THE CONDUCT OF RESPONDENT.**

1.  **THE BOARD OF BAR OVERSEERS VIOLATED RESPONDENTS RIGHT TO DUE PROCESS WHEN IT RETROACTIVELY APPLIED THE SANCTIONS DESCRIBED IN MATTER OF SCHOPFER, 426 Mass. 183 (1997) TO THE CONDUCT OF RESPONDENT**

In <u>Matter of Saab</u>, 406 Mass. 315; 547 N.E.2d 919; 1989 Mass. LEXIS 423, decided after the "Three Attorneys" [392Mass. 827 (1984)] case, the Supreme Judicial Court recognized (p. 8): "The Appellant's license to practice law is a property interest that cannot be suspended without due process of law."

The Board Of Bar Overseers and the Supreme Judicial Court both relied upon **The Matter of Schoepfer**, **SJC-07407 (Dec. 3, 1997) 426 Mass. 183 (1997**, in their decisions regarding Petitioner. The sanctions described in <u>Matter of Schoepfer</u>, were applied retroactively to the conduct allegedly committed by the respondent.

Briefly stated, <u>Matter of Schoepfer</u> provides as follows:

"Intentional commingling of clients' funds with those of an attorney should be disciplined by private reprimand. Unintentional, careless use of clients' funds should be disciplined by public censure.

Intentional use of clients' funds, with no intent to permanently or temporarily deprive the client, and no actual deprivation, should be punished by a term of suspension of appropriate length.

Intentional use, with intent to deprive or with actual deprivation, should be disciplined by disbarment or indefinite suspension, Matter of Schoepfer. In this case, the Massachusetts Supreme Judicial Court (although it seeks to reintroduce consistent guidelines for the discipline of Attorneys in Massachusetts), cautions:

> "An offending lawyer has a heavy burden to demonstrate that these principles should not be applied to him. (...) There may be special mitigating facts that justify less severe discipline. Our rule is not mandatory." ... (as published by Mass. Lawyers Weekly, p. 2). (underline added)

Matter of Schoepfer is consistent with the presumption against retroactivity. The Supreme Judicial Court states, in the last paragraph of its decision: "For the future...", (underline added) therefore clearly indicating that the decision is to be prospective (and not retroactive), and is to apply to conduct that occurred after the decision (since "Matter of Three Attorneys" had never been consistently applied - but the ABA [Model Rules, *supra*, Rule 10: Commentary] favors "providing the flexibility to select the appropriate sanction in each particular case of lawyer misconduct.").

Without question, the respondent's alleged violations occurred between 1994 and October 1997, prior to Matter of Schoepfer, issued in December 1997.

Therefore, the question becomes whether, the Board violated Petitioner's right to due process when it applied the principles espoused in Matter of Schoepfer to his conduct.

The sanctions described in Matter of Schoepfer exist by virtue of judicial decisional law. In matters involving the rights of litigants with respect to contracts and property, Massachusetts is especially reluctant to apply decisional law retrospectively. **See Payton v. Abbott Labs, 386 Mass. 540, 566 (1982) citing Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980)**(court declined to apply tenets of decision retrospectively to insurance contract**); Rosenberg v. Lipnick, 377 Mass. 666 (1979)** (antenuptial contracts); **Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85 (1979)** (non-compete agreements in deeds and leases); **McIntyre v. Associates Fin. Servs. Co. of Mass., Inc., 367 Mass. 708 (1975) (declining to apply the principles in Fuentes v. Shevin, 407 U.S.67 (1972) retrospectively to parties obtaining property through prejudgment attachment).** The need to apply decisional law prospectively stems from the strong likelihood of a litigant's reliance on the law as it exists at the time of the making of the contract or the property transaction. Payton, 386 Mass. at 566.

There exists in the United States, both at the federal and state levels, a strong presumption against the retroactive application of new rules or statutes to past or pending cases. Both the U.S. Supreme Court, and the Massachusetts Supreme Judicial Court have consistently upheld this principle. The presumption against retroactivity prevents rules or statutes from attaching new liabilities to past

conduct, impairing rights the parties possessed at the time of the conduct, or otherwise applying new adverse consequences to actions that took place before their enactment.

Fundamental fairness mandates that the law, sanctions and disciplinary landscape in place at the time of the commencement of Bar Counsel's inquiry must be the standard by which Respondent's alleged misconduct is measured. Here Bar Counsel's inquiry into Respondent's IOLTA Account began in June of 1996 (C2-96-0324). For nearly one year, Respondent communicated with an Assistant Bar Counsel. Respondent's disciplinary matter was then transferred to another Assistant Bar Counsel and no action was taken for several months. From the commencement of Bar Counsel's inquiry, Respondent relied on the <u>pre-Schoepfer</u> case law when deciding not to enter into negotiations with Bar Counsel for an agreed-upon disciplinary sanction. It was clear to Respondent that, under <u>pre-Schoepfer</u> case law, his admitted conduct would give rise to a public reprimand at worst. As stated above, the Matter was then scheduled for three Personal Interviews with Bar Counsel. It was at this point that Respondent retained an attorney. In this matter, the respondent's reliance on the unsettled state of law prior to settlement justifies the non-retroactive application to the respondent the sanctions described in <u>Matter of Schoepfer, supra</u>. The respondent's conduct occurred prior to the issuance of Matter of Schoepfer, supra.

The following are examples of decisions and sanctions imposed prior to <u>Matter Of Schoepfer</u> regarding client fund abuses: <u>**In Matter of Deragon, 398**</u>

**Mass. 127 (1986),** the finder of fact found that the attorney intentionally deprived a client of funds. As a result of the attorney's conduct, the court imposed a public censure. Similarly, in **Matter of Driscoll, 410 Mass. 695 (1991),** another intentional deprivation of client funds case, the court imposed a public censure, stressing no dishonesty and little harm to the clients. The Supreme Judicial Court has also imposed more severe sanctions without the need imposing the crushing punishment of disbarment. See, e.g., **Matter of Dawkins, 412 Mass. 90 (1992)** (intentional commingling and deprivation resulted in six-month suspension); **Matter of Carrigan, 414 Mass. 368** (1993) (same).

The respondent relied on the unsettled state of law with regard to intentional commingling and deprivation at the Personal Interviews conducted by Bar Counsel, prior to his hearing before the Hearing Officer. **(See Ex. B attached hereto and also at Respondent's Appeal Brief To Single Justice, Aff. No. 7. Affidavit of the Respondent.)** Respondent was offered by Bar Counsel, a disciplinary sanction less than that recommended by the Special Hearing Officer, but he and his counsel refused that recommendation reasonably believing that the Schoepfer Decision would not apply to his case and that, therefore, it was reasonable to expect a trier of fact to recommend a private or public reprimand.

The respondent relied on the unsettled state of law with regard to intentional commingling and deprivation when he and his counsel did not accept Bar Counsel's disciplinary recommendation. **(See Ex. C attached hereto and**

also at Respondent's Appeal Brief To The Single Justice, at App. Aff. No. 8
Affidavit Of Respondent's Counsel)

In **Massachusetts Institute of Technology vs. Department of Public
Utilities & another, SJC-07277 (Decided Sept. 18, 1997)**, the Supreme Judicial
Court noted that: "MIT argues that the application of the CTC violates principles
prohibiting the inequitable retroactive application of new decisional law",
recognizing therefore that such principles apply in Massachusetts. In the MIT
matter, however, the Supreme Judicial Court did not have sufficient information to
render a decision, and the case was remanded to the Department of Public
Utilities.

**Commonwealth v. Fuller, SJC-06421; 421 Mass. 400; 657 N.E.2d 1251;
1995 Mass. LEXIS 453,** also generally confirms the Massachusetts presumption
against retroactivity. This criminal case refers to the ex port facto of the U.S.
Constitution, Art. I, §10, and the Massachusetts Declaration of Rights, art. 24. In
Fuller, the Massachusetts Supreme Judicial Court stated:

"The construction Fuller proposes would give the amendment retroactive
effect, varying the substantive consequences of acts completed before the effective
date. Absent clear language to the contrary it is presumed that legislation is not
intended to operate retroactively. See **Nantucket Conservation Found, Inc. v.
Russell Management, Inc.**, 380 Mass. 212, 214, 402 N.E.2d (501) (1980);
**Commonwealth v. Davis**, 380 Mass. 1, 14-15, 401 N.E.2d 811 (1980). See also
**Hasset v. Welch**, 303 U.S. 303, 314, 82 L.Ed. 858, 58 S.Ct. 559 (1938).

In the present case, that usual presumption is greatly strengthened because there are serious, if not insuperable, constitutional barriers to the alternative interpretation for which Fuller contends.  Commonwealth v. Davis, supra at 15. See **School Comm. of Greenfield v. Greenfield Educ. Ass'n, 385 Mass. 70, 79, 431 N.E.2d 180 (1982)** (recognizing 'out duty to construe statutes so as to avoid … constitutional difficulties, if reasonable principles of interpretation permit')." (at 407-408; Lexis p. 13-14).

As stated above, In Matter of Schoepfer, *supra*, there is no language that would clearly (and unfairly) permit retroactive and general application of the (suggested) standards first articulated in the matter of "Three Attorneys" (*supra*). On the contrary, the Supreme Judicial Court in the last paragraph of its decision indicated that it was to be "For the future".

In the Respondent's case, because the Schoepfer standards could result in a more severe posture, they adversely affect the expectations the Respondent reasonably held – both at the time of the conduct and during the investigation.  On that basis also, Schoepfer meets the criteria for prospective (not retroactive) application.

To allow the gestation of case law after a disciplinary inquiry has been commenced to apply to this Respondent is unfair, unjust and a violation of Respondent's due process rights. Respondent should receive a sanction that was commonly imposed on Respondent's for similar conduct. That sanction would be something less than disbarment.

<u>Matter of Schoepfer</u> is consistent with the presumption against retroactivity. The Supreme Judicial Court states, in the last paragraph of its decision: "<u>For the future...</u>", (underline added) therefore clearly indicating that the decision is to be prospective (and not retroactive), and is to apply to conduct that occurred after the decision (since "Matter of Three Attorneys" had never been consistently applied.

In **Landgraf v. USI Film Products, et al.**, 511 U.S. 244 (1994), involving a Title VII matter, where an employee claimed that a new statute applied to her, but the Court determined that since her case was pending when the new statute was enacted and the misconduct occurred prior to the enactment of the statute, it could not apply to the employee. The U.S. Supreme Court stated:

> "As Justice Scalia has demonstrated, the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.' *Kaiser,* 494 U.S. at 855 (Scalia, J. concurring)." (published in Legal Information Institute [Cornell U.], at p.5).

<u>Landgraff</u> (*supra*) also states that its purview applies to "congressional enactments and administrative rules" (p. 6), which "will not be construed to have retroactive effect unless their language requires this result." In <u>Landgraf</u>, the U.S. Supreme Court also referred (at p. 6) to a New Hampshire case, **Society for the Propagation of the Gospel v. Wheeler,** 22 F.Cas. 756 (No. 13,156) (CCDNH 1814), in which "Justice Story offered an influential definition":

"every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective . . ." [as opposed to retroactive] *Ibid.* (citing *Calder v. Bull,* 3 Dall. 386 (1798) and *Dash v. Van Kleek,* 7 Johns, 477 (N.Y. 1811)."

In **Lindh v. Murphy, Warden**, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), the U.S. Supreme Court upheld its ruling in Landgraf, ruling against the retroactivity of a new Wisconsin law. The U.S. Supreme Court stated, in conclusion: "We hold that the negative implication of § 107(c) is that the new provisions of chapter 153 generally apply only to cases filed after the Act became effective." (edition in Legal Information Institute, Cornell U., p. 4).

In **Weaver v. Graham, Governor of Florida**, 450 U.S. 24; 101 S.Ct. 960; **67 L.Ed. 2d 17; 1981 U.S. LEXIS 67,** where the Florida State Supreme Court held that a new section of law altering prisoners' "gain-time credits" (credits for good conduct) operated retroactively, the U.S. Supreme Court reversed. In holding that the new section of the law could not be applied retroactively, the U.S. Supreme Court explained:

"The state supreme court [of Florida] denied his [Weaver's] petition and reasoned that gain-time was an act of grace rather than a vested right and could be withdrawn, modified or denied. On appeal, the court found that it was the effect, not the form of the law that determined whether it was ex post fact (sic) and that the critical question was whether the law changed the legal consequences of acts completed before its effective date." (Case Summary, p. 1).

On Outcome: "The court reversed the judgment of the state supreme court denying the prisoner's writ for habeas corpus and remanded for further proceedings because the new statute pertaining to gain-time credits was void as it applied to the prisoner, whose crime occurred before its effective date." (Case Summary, p. 1).

In a recent matter, <u>INS v. St. Cyr</u>, 533 U.S. 289; 121 S.Ct. 2271; 150 L.Ed. 2d 347; 2001 U.S. LEXIS 4670, the U.S. Supreme Court, re-affirming its interpretation in <u>Landgraf</u> (*supra*), decided that the district courts retained *habeas* jurisdiction under 28 U.S.C.S. § 2241, and that new immigration statutes enacted after an alien had engaged in certain conduct, did not apply retroactively to the alien, in all fairness, because of settled expectations and the state of the law at the time of the conduct.    The U.S. Supreme Court held (p. 323-324; Lexis p. 2292):

"Relying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would foreclose § 212(c) relief [alien's right to apply for a waiver of the ground on which he was deportable], a great number of defendants in Jideonwo's and St.Cyr's position agreed to plead guilty.  Now that prosecutors have  received the benefit of these plea agreements, agreements that were likely facilitated by the alien's belief in their continued eligibility for § 212(c) relief, it would surely be contrary to 'familiar considerations of fair notice, reasonable reliance, and settled expectations,' <u>Landgraff</u> 511 U.S. at 270, to hold that IIRIRA [new immigration act in question]'s subsequent restrictions deprive them of any possibility of such relief."

In this Respondent's case, similarly, the alleged conduct occurred before the date of the disruptive decision in <u>Schoepfer</u> (*supra*).

2.    **THE BOARD OF BAR OVERSEERS VIOLATED RESPONDENT'S RIGHT TO DUE PROCESS WHEN IT WHEN IT RETROACTIVELY IMPOSED MANDTORY 8 YEARS OF DISBARMENT TO RESPONDENT, RATHER THAN THE 5 YEAR PERIOD REQUIRED PRIOR TO JANUARY OF 2000.**

The presumption against retroactivity even more strongly applies to the current imposition of 8 years of disbarment, rather than the 5 years which were imposed prior to January of 2000. Petitioner's Hearings before the SHO began in 1999. This is unconstitutional, in that it attaches new consequences to past conduct, etc. See INS v. St.Cyr, 533 U.S. 289 (2001); 121 S.Ct. 2271; Landgraf v. USI Film Products, et al., 511 U.S. 244 (1994); Lindh v. Murphy, Warden, 117 S.Ct. 2059 (1997), etc.  - In the Schoepfer case, there were serious aggravating circumstances.

**B.  AT HEARING, THE BOARD OF BAR OVERSEERS VIOLATED RESPONDENT'S RIGHT TO DUE PROCESS WHEN IF FAILED TO AFFORD THE RESPONDENT THE BENEFIT OF THE DOUBT WITH RESPECT TO THE CREDIBILITY OF HIS TESTIMONY**

Due process requires that the Petitioner, just as any other person, and in light of the fact that he never before has faced any administrative or judicial charges, be afforded the benefit of the doubt. The Petitioner is entitled to due process and equal protection of the law under the Fourteenth Amendment to the Constitution of the United States, and his constitutional right is protected by G.L.

c. 30A § 14(a). The benefit of the doubt is part of the constitutional right to due process.

In **Victor v. Nebraska; Sandoval v. California, 511 U.S. 1; 114 S.Ct. 1239; 127 L.Ed.2d 583; 1994 U.S. LEXIS 2490**, the U.S. Supreme Court, at 511 U.S. 1, 5, states: "The beyond a reasonable doubt standard is a requirement of due process, ..." (underline added). The U.S. Supreme Court (at p. 8) still recognizes the definition of a "reasonable doubt" "given by Chief Justice Shaw of the Massachusetts Supreme Judicial Court more than a century ago. Chief Justice Shaw stated, *inter alia*:

> "All the presumptions of law independent of evidence are in favor of innocence; and every person is presumed to be innocent until he is proved guilty. If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal." ..."

The U.S. Supreme Court approved the definitions of the "benefit of the doubt" given in the Victor and Sandoval cases. In Sandoval, the presiding Judge referred to the definition by Chief Justice Shaw. The Judge indicated to the jury that their duty was "to determine the facts of the case from the evidence received in the trial and not from any other source" (p. 13). In the Victor case (at 21-22), the U.S. Supreme Court approved of the following: "In determining any questions of fact presented in this case, you should be governed solely by the evidence introduced before you. You should not indulge in speculation, conjectures, or inferences not supported by the evidence." (underline added)

In **O'Neal v. McAninch, 513 U.S. 432; 115 S.Ct. 992; 130 L.Ed. 2d 947; 1995 U.S. LEXIS 908,** the U.S. Supreme Court "held that when a federal court considering a habeas petition [a civil proceeding] has grave doubts about whether a trial error of federal law was harmless it was required to give the petitioner the benefit of the doubt and treat the error as prejudicial." (Case Overview).

The Petitioner's rights to due process, his right to a "benefit of the doubt" in appropriate circumstances (no prior charges, compelling mitigating factors, no intentional misconduct, etc.) is at stake here. This is a constitutional, a substantial right. The Court held in O'Neal (at p. 441):

> "Moreover, precedent suggests that civil and criminal harmless-error standards do not differ in their treatment of grave doubt as to the harmlessness of errors affecting substantial rights. In **Kotteakos [Kotteakos v. United States, 328 U.S. 750; 90 L.Ed. 1557; 66 S.Ct. 1239]**, the Court interpreted the then-existing harmless-error statute, 28 U.S.C. § 391, now codified with minor change at 28 U.S.C. § 2111. See *Kotteakos* ... That statute, by its terms, applied to both civil and criminal cases, and *Kotteakos* made no distinction, at least with respect to the question at issue here, between the two types of cases. "

Inexplicably, the Special Hearing Officer determined Petitioner's testimony not to be credible even when corroborated by Bar Counsel's witnesses and substantial documentary evidence.

From the outset of Bar Counsel's inquiry, Petitioner admitted many facts. Generally, Petitioner admitted the same facts and offered the same factors at Hearing. The determination by the Appeal Panel and the SHO that Petitioner was not credible was arbitrary capricious and totally without foundation. Moreover, it calls into question the fairness of the hearing process. Is it fair that, over a four-

year period Respondent had offered factors in mitigation the truth of which were not questioned, and then to have each and every factor discounted at Hearing without rebuttal testimony or evidence submitted by Bar Counsel.

Petitioner had no prior history for lack of credibility in any forum.

### C. THE BOARD OF BAR OVERSEERS AND/OR BAR COUNSEL SUBMITTED DOCUMENTS INTO THE RECORD WHICH PETITIONER SPECIFICALLY DIRECTED BE EXCLUDED AND THEN OMITTED RESPONDENT'S STATEMENT IN MITIGATION WHICH WAS ATTACHED TO AND REFERENCED IN RESPONDENT'S ANSWER

Petitioner sent a letter, dated August 30, 2001, to the Board of Bar Overseers, and to Bar Counsel, concerning an *ex-parte* communication initiated by the Special Hearing Officer (SHO) in this case, with an attorney, a person whom the SHO may have thought to be "outside the hearing process", but who turned out to be a witness. The purpose of the letter was to request Bar Counsel investigate the ex parte communication to ensure that Respondent was accorded due process and a fair hearing.

The Board made the letter part of the record, even though the Petitioner had specifically asked that it not be made part of his appeal at that time. Petitioner did not want to bring the matter to the Appeal Panel's attention unless warranted.

At some point, the Board and/or Bar Counsel omitted from the record Petitioner's (134) page Statement In Mitigation With Exhibits and never notified Petitioner his counsel that it had been omitted.

These action are not in the spirit of fundamental fairness, and violated

Respondent's due process right to a fair hearing and meaningful appeal review.

Moreover, these actions indicate that the lines separating the functions and

responsibilities of Bar Counsel and the Board, have become blurred.

**D.      BAR COUNSEL'S FAILURE TO CONCLUDE THE
         INQUIRY, INVESTIGATION AND HEARING
         CONCERNING RESPONDENT IN A REASONABLE
         PERIOD CONSTITUTES A VIOLATION OF THE
         FEDERAL AND STATE ADMINISTRATIVE
         PROCEDURES**

The **Massachusetts Administrative Procedures Act**, M.G.L. Section 30A,

and the **Federal Administrative Procedure Act ("APA"), 5 U.S.C., Section 701**

*et seq*t directs agencies to conclude matters presented to them "within a reasonable

time," 5 U.S.C. § 555(b) (1982), and stipulates that the "reviewing court shall - -

compel agency action withheld or unreasonably delayed. . ." 5 U.S.C. § 706(1)

(1982). In the case at hand, two complaints were lodged against respondent; the

first in September of 1995; and the second in June of 1996. All of the alleged and

"stipulated to" conduct which was the subject of Bar Counsel's inquiry occurred

before the Spring of 1997. Bar Counsel did not request a formal hearing on either

of the charges until the Fall of 1999. To require an attorney to be subjected to a

three or four year inquiry is humane, and fundamentally unfair. Such a lengthy

process prevents an attorney from making any long-term plans for his practice,

subjects he and his family to great pain, discomfort and insecurity. Perhaps most

damaging, is that the length of this process and its attendant circumstances, makes

it very difficult for an attorney to properly administer to the needs of his clients.

The "dark cloud" which has hung over Petitioner's practice for seven years, has

taken an immeasurable toll on all aspects of his life - which is exactly what the

Federal and State Administrative Procedures Acts seek to prevent. The length of time taken by Bar Counsel to conclude this matter, approximately four years, was a violation of due process and itself a penalty.

### CONCLUSION

Petitioner has admitted responsibility for his conduct. Petitioner respectfully requests this Honorable Court to order the Massachusetts Board of Bar Overseers to reconvene Petitioner's disciplinary matter and to perform its function in accordance with due process and fundamental fairness and with specific guidance with respective to impermissive retroactive application of decision and statatury law so that Petitioner can receive a fair and appropriate sanction.

Respectfully submitted,

Dated: December 22, 2003

James C. Dragon, *Pro se*
P.O. Box 478
Lowell, MA  01853